

## THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS

In re: Suzanne Eser, Debtor

**Case No. 24-10976**
Chapter 7

## MOTION OF VITAVERA REALTY, LLC

## FOR RELIEF FROM THE AUTOMATIC STAY

Vitavera Realty, LLC, a Massachusetts limited liability company with offices at 110 Newbury Street, Danvers, Massachusetts, 01960, ("Creditor") moves the court for an order granting it relief from the automatic stay pursuant to Section 362 of title 11 of the United States Code, **11 U.S.C. § 101** et seq. (the "Bankruptcy Code") and respectfully shows the Court the following in support thereof:

### I. JURISDICTIONS, VENUE AND STATUTORY BASIS

1. On May 20, 2024 ("Petition Date"), Susan Eser ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code in this Court.

2. The Court has jurisdiction over this matter pursuant to **28 U.S.C. §§ 157** and **1334**. Venue is proper pursuant to **28 U.S.C. §§ 1408** and **1409**.

3. The statutory predicate for Creditor's Motion for Relief from the Automatic Stay (the "Motion") is **11 U.S.C. § 362(D)(2)(A)**, with respect to a stay of an act against property (A) in which the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization;.

### II. BACKGROUND FACTS

4. On or about July 6, 2006, the Debtor executed and delivered to Members Mortgage Company, Inc. a promissory note in the original principal amount of $370,000.00 (as amended or modified to date, the "Note").

5. The Note is secured by real property commonly known as 24 Endicott Street, Peabody, Essex County, Massachusetts (the "Real Property") by virtue of the Mortgage dated July 6, 2006, and recorded

on July 7, 2006 in Book 25861, Page 161 of the Essex County South District Register of Deeds (the "Mortgage"), see EXHIBIT A, attached hereto.

6. The Note and Mortgage were subsequently assigned to Massachusetts Institute of Technology Federal Credit Union (the "Assignee"), by assignment dated July 6, 2006, and recorded on July 7, 2006 in Book 25861, Page 182 of the Essex County South District Register of Deeds, see EXHIBIT B, attached hereto.

7. On or about November 25, 2020, and on various and sundry dates prior to and thereafter, the Debtor defaulted upon the terms of the Mortgage.

8. On or about April 14, 2023, pursuant to the Statutory Power of Sale contained within the Mortgage, and after all due Statutory Notice, the Assignee/Mortgagee caused the Real Property to be sold at Mortgagee's Foreclosure Sale of Real Estate to the highest bidder, being, Aleks Palaj, of Peabody, Massachusetts (the "Purchaser"). See Memorandum of Terms of Sale (the "Bid") attached hereto as EXHIBIT C.

9. On or about April 17, 2023, Aleks Palaj, assigned the Bid to Vitavera Realty, LLC, conferring upon the Creditor the rights of the Purchaser conferred upon the Assignor by the Memorandum of Terms of Sale. See Assignment of Real Estate Purchase Contract attached hereto as EXHIBIT D.

10. On or about May 16, 2023, pursuant to the terms of the Memorandum of Terms of Sale, the Creditor tendered the purchase price to Mortgagee in consideration title to the Real Property, by virtue of Foreclosure Deed dated May 10, 2023 recorded at Record Book 41565, Page 336. See Exhibit E attached hereto.

11. On or about May 19, 2023, the Creditor served 14 Day Notice to Quit upon the Debtor, seeking possession of the Real Property against the Debtor as a tenant as sufferance. See attached, Exhibit F.

12. On or about June 8, 2023, the Creditor served Summary Process Summons and Complaint upon the Debtor, and filed the same in the Massachusetts Trial Court, Housing Court Department, Docket No. 23H77SP003218, Vitavera Realty, LLC, v. Suzanne Eser. See attached Exhibit G.

13. On or about September 27, 2023, Default Judgment was entered in favor of Creditor, awarding the Creditor Possession of the Real Estate, as Plaintiff therein.

14. On or about October 13, 2024, Creditor requested that the Housing Court issue Execution.

15. On or about May 3, 2024, the Housing Court Ordered that the plaintiff's request for Execution to Issue was allowed. See attached, Ruling on Plaintiff's Motion for Issuance of Execution attached as Exhibit H.

16. On or about May 6, 2024, the Clerk-Magistrate of the Northeast Housing Court issued Execution for Possession and Money Judgement in favor of the Creditor. See attached as Exhibit I.

17. On or about May 13, 2024, the Creditor notified the Debtor through AAA Constable Services of Lowell, Massachusetts that it intended to effectuate the levy on execution on Monday, May 20, 2024, at 10:00 a.m. See attached, Exhibit J.

18. On May 18, 2024, the Housing Court held an Emergency Hearing the Stay Execution, which Motion was DENIED.

## III. REQUESTED RELIEF

19. By this Motion, Creditor moves the Court to grant relief from the automatic stay pursuant to **11 U.S.C. § 362(d)(2)(a)** to allow Creditor to pursue its rights and remedies under non-bankruptcy law in and against the Real Property by levying upon the Execution issued by the Housing Court on May 6, 2024.

20. Creditor seeks Relief from Stay because it lacks adequate protection of its financial interest in the Real Property, to wit, fee simple ownership acquired by Foreclosure Deed. Creditor is being denied its ownership interests by Debtor by her continued occupancy and possession following Eviction and Issuance of Execution for Possession on May 3, 2024. Debtor lacks the ability to provide cash security rendering Creditor unable to obtain relief from any other asset of the Debtor.

Debtor is a Tenant at Sufferance following foreclosure of title in 2023 and entry of Judgment for Possession in favor of the Creditor. The Debtor owns no equity in the Real Estate, making it unnecessary to maintain the stay. The Creditor's rights are not adequately protected while the Debtor remains in possession. Furthermore, allowing the Creditor to take possession serves the public interest by ensuring efficient enforcement of valid property rights.

WHEREAS, Creditor respectfully requests that the Court:

Enter an Order:

(i). Granting Creditor relief from the automatic stay to permit it to exercise any and all state law rights and remedies against Debtor, including obtaining Possession of Real Estate.

(ii). Waiving expiration of the stay period as set forth in rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure; and

(iii). Granting Creditor such additional relief as it may be entitled to under the facts and applicable law.

Date: May 22, 2024

Respectfully submitted for
VitaVera Realty, LLC, by its attorney,

Chris J. Thornton, Esq.

MA BBO # 642691

172 Main Street, PO Box 701

Rowley, MA 01969

978.432.1211

Email: Chris@ThorntonLawNorthShore.com

Exhibit A - J

THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re: Suzanne Eser, Debtor

Case No. 24-10976
Chapter 7

## MOTION OF VITAVERA REALTY, LLC

## FOR RELIEF FROM THE AUTOMATIC STAY

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing MOTION FOR RELIEF FROM THE AUTOMATIC STAY, along with copies of all pertinent documents and exhibits, and NOTICE OF HEARING have been served electronically or by mailing a copy thereof, first class U.S. mail, postage Prepaid and Email to the following:

DEBTOR:

Suzanne Eser, Pro Se, 24 Endicott Street, Peabody, MA 01960,  and workemailonly@mail.com

and;

U.S. TRUSTEE:

Maddoff & Khoury, LLP, 124 Washington Street, Suite 202, Foxborough, MA 02035.

Dated: May 22, 2024

Christopher J. Thornton, Esq.

THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re: Suzanne Eser, Debtor

Case No. 24-10976
Chapter 7

PROPOSED ORDER FOR

RELIEF FROM THE AUTOMATIC STAY

      This matter came before the above signed United States Bankruptcy Judge upon the Motion for Relief from Stay (the "Motion") filed by Vitavera Realty, LLC, (the "Creditor") to exercise its state law rights with respect to certain real property (the "Real Property") located at 24 Endicott Street, Peabody, Essex County, Massachusetts and more fully described in said Motion. The Court having considered the Motion and the record in this case finds and concludes follows:

1. The Creditor filed the Motion on May 20, 2024.
2. The Clerk of the Bankruptcy Court mailed a Notice to interested parties on May 22, 2024 that any objection to the Motion must be filed with the Court by _____, the objection date, and that if no objections were filed within that time period, then the Court would consider the Motion without a hearing.
3. No objection to the Motion was filed by any interested party, and the time within which objections must be filed as set forth in the Notice has expired.
4. Cause exists for modification of the automatic stay afforded by Section 362 of Bankruptcy Code.

      Now, THEREFORE, it is hereby ORDERED, ADJUDGED AND DECREED, that the Motion is GRANTED, and the automatic stay afforded by Section 362 is modified to allow the Creditor, Vitavera Realty, LLC to exercise its state law rights with respect to the Real Property.

      IT IS FURTHER ORDERED that Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure is waived and that the Creditor may immediately enforce and implement this Order.

END OF DOCUMENT

THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re: Suzanne Eser, Debtor

Case No. 24-10976
Chapter 7

MOTION OF VITAVERA REALTY, LLC

FOR RELIEF FROM THE AUTOMATIC STAY

# Exhibit A - J

# EXHIBIT A

Members Mortgage Company, Inc.

10 Cedar Street
Woburn, MA 1801

File No: 06-112

```
2006070700033 Bk:25861 Pg:161
07/07/2006 09:28:00 MTG Pg 1/21
```

──────────── [Space Above This Line For Recording Data] ────────────

## MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20, and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated July 6, 2006, together with all Riders to this document.

**(B) "Borrower"** is Suzanne Eser.  Borrower is the mortgagor under this Security Instrument.

**(C) "Lender"** is Members Mortgage Company, Inc.. Lender is a corporation, organized and existing under the laws of Commonwealth of Massachusetts . Lender's address is 10 Cedar Street, Woburn, Massachusetts 01801.  Lender is the mortgagee under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated July 6, 2006. The Note states that Borrower owes Lender Three Hundred Seventy Thousand and 00/100 Dollars (U.S. $370,000.00) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than August 1, 2036.

**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ■ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ■ Other(s) [specify] EXHIBIT "A". |
| ■ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

**MASSACHUSETTS**--Single  Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3022    1/01  (page 1 of 16 pages)
©1986 - 2003 Standard Solutions, Inc. (781)324-0550    *Printed: Wed Jul 5, 2006 By SCUser WS1*

FNMtgMA

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I) "Community Association Dues, Fees and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** mean those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described

property located in the County [Type of Recording Jurisdiction] of Essex [Name of Recording Jurisdiction]

Meaning and intending to convey and hereby conveying the same premises conveyed to me/us by deed dated / / and recorded with Essex South Registry of Deeds  in Book , Page .

### SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of 24 Endicott Street, Peabody, Massachusetts 01960 ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT  combines uniform covenants for national use and non-uniform covenants with  limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or

cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**MASSACHUSETTS**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    **Form 3022   1/01** (page 3 of 16 pages)
©1986 - 2003 Standard Solutions, Inc. (781)324-0550    *Printed:  Wed Jul 5, 2006 By SCUser WSI*    FNMtgMA

**4.  Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.  Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the

Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has -if-any- with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower

fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgement, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgement, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not

charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective  action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.  **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the STATUTORY POWER OF SALE, **Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

23. **Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of courtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

John F. Fitzgerald, Jr.
Witness as to All

Suzanne Eser                           7/6/06
                                       MORTGAGOR

——————————— [Space Below This Line For Acknowledgment] ———————————

## Commonwealth of Massachusetts,

Essex, ss:

On this **Sixth day of July, 2006**, before me, the undersigned notary public, personally appeared **Suzanne Eser**, proved to me through satisfactory evidence of identification, which were _MA MA/Licd LLC_ to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

......................................................... (Seal)
John F. Fitzgerald, Jr.                    —Notary Public
My Commission Expires: May 19, 2011

# ADJUSTABLE RATE RIDER
## (1 Year Treasury Index -- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 6th day of July, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **Members Mortgage Company, Inc.** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

_24 Endicott Street, Peabody, MA 01960
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 5.250 %. The Note provides for changes in the interest rate and the monthly payments as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of 08/01/2009, and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding 2.750 percentage points (2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **7.250** % or less than **3.250** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

MULTISTATE ADJUSTABLE RATE RIDER--ARM 5-2--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3111   1/01 (page 1 of 2 pages)

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____   7/6/06   (Seal)
Suzanne Eser -Borrower

_____   (Seal)
-Borrower

MULTISTATE ADJUSTABLE RATE RIDER--ARM 5-2--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3111   1/01   *(page 2 of 2 pages)*

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **Sixth day of July, 2006**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **Members Mortgage Company, Inc.,** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

### 24 Endicott Street, Peabody, Massachusetts 01960
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac Uniform Instrument     Form 3170 1/01 *(page 1 of 2 pages)*

agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents, and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

Suzanne Eser                              7/6/04

**MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac Uniform Instrument Form 3170   1/01**   *(page 2 of 2 pages)*

## Exhibit A - Property Description

**Closing date:**     07/06/2006

**Borrower(s):**     Suzanne Eser

**Property
Address:**     24 Endicott Street, Peabody, Massachusetts 01960

The land with the buildings thereon, situated in Peabody, Essex County, Massachusetts on 24 Endicott Street, bounded and described as follows:

Beginning at the Southerly corner of said premises and thence running Northeasterly by land formerly of Stimpson, about two hundred and fourteen feet; thence running Northerly by land formerly of James Ware, one hundred twenty feet to Endicott Street; thence running Southwesterly by said Endicott Street, twenty-five feet; thence running Southerly by the Lawrence Branch of the Boston & Maine Railroad, formerly the Essex Railroad, about two hundred and fifty feet to the point begun at.

Together with the benefit of all easements of record, if in force and applicable.

For title reference see deed to me dated May 26, 1998 recorded at the Essex South District Registry of Deeds at Book 14833, Page 189.

# Exhibit B

```
2006070700034 Bk:25861 Pg:182
07/07/2006 09:28:00 ASGT Pg 1/1
```

After Recording Return To:
Members Mortgage Company, Inc
10 Cedar Street, Unit 11
Woburn, MA 01801

## ASSIGNMENT OF MORTGAGE

**MEMBERS MORTGAGE COMPANY, INC.**, a Massachusetts corporation with its principal place of business at 10 Cedar Street, Woburn, MA 01801, holder of a mortgage from Suzanne Eser    to Members Mortgage Company, Inc.

Dated 07/06/2006 and recorded with the ___Essex South___ Registry of Deeds as Instrument No. _____ or at Book 25861, Page 101, for consideration paid, assign said mortgage and the note and claim secured thereby to
*herewith

**Massachusetts Institute of Technology Federal Credit Union**
700 Technology Square, NE-48
Cambridge, MA 02142

25861 - 161

**IN WITNESS WHEREOF**, the said MEMBERS MORTGAGE COMPANY, INC., has caused its corporate seal to be hereto affixed and these presents to be signed, in its name and behalf by David Capone this 07/06/2006

MEMBERS MORTGAGE COMPANY, INC.

David Capone, Senior Vice President

The Commonwealth of Massachusetts
Middlesex, SS

At Woburn, in said County on this 07/06/2006 before me, the undersigned notary public, personally appeared **David Capone** of Members Mortgage Company, Inc. proved to me through satisfactory evidence of identification, which was _____ to be the person (s) whose name is signed on the preceding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose. And affixed his signature to the within and acknowledged it to be the free act and deed of Members Mortgage Company, Inc., before me.

, Notary Public
My Commission Expires: _____

RE:   24 Endicott Street, Peabody, MA 01960

# Exhibit C

## MEMORANDUM OF TERMS OF SALE

(Foreclosure of Mortgage)

**Date:  April 14, 2023**                                      **Peabody, Essex County,
Massachusetts**

I hereby acknowledge having this day purchased on behalf of the undersigned or nominee, at Mortgagee's Sale at Public Auction of **Daniel P. McLaughlin & Co. Auctioneers** the sum of _____ _____ ($ _____ ), the property located in **Peabody, Essex County**, Massachusetts, having an address of **24 Endicott Street**, now or formerly of Suzanne Eser, being the premises described in the printed notice of Mortgagee's Sale of Real Estate hereto attached, and I agree to comply with the terms of sale as stated by the Auctioneer and hereto annexed having paid into the hands of the auctioneer the sum of Ten Thousand and no/100 Dollars ($10,000.00) agreeable to the terms of sale.  I hereby agree to forfeit said sum to the use of seller should I fail to comply with the residue of the terms.

Ten Thousand and no/100 Dollars ($10,000.00) in cash or certified check or bank check has been paid into the hands of the Auctioneer at the time and place of sale to bind the sale to be forfeited to the use of the seller in case the purchaser shall fail to comply with the residue of the terms of sale, but a forfeiture of said sum shall not release the purchaser from his liability under this contract.  The balance of the purchase money is to be paid in cash or certified check or bank cashier's or treasurer's check in accordance with the terms of sale.  If Mortgagee is unable to perform timely, Mortgagee at is sole option may unilaterally extend the date of performance up to 30 days by providing notice of same to purchaser or to purchaser's attorney.

I have read the above and agree to be bound by it and other terms of sale as well as the additional terms which are set forth on the attachment to this Memorandum.

| | |
|---|---|
| _____ | _____ |
| Massachusetts Institute of Technology Federal Credit Union (signed by Foreclosing Mortgagee or its attorney) | Signature of Purchaser Purchaser: Print name: _____ Address: _____ |
| | Phone Number: _____ E-mail: |

The above sale is hereby confirmed.

_____
Auctioneer:

## MORTGAGEE'S SALE OF REAL ESTATE

By virtue and in execution of the Power of Sale contained in a certain Mortgage dated July 6, 2006 given by Suzanne Eser to Members Mortgage Company, Inc. recorded in Essex County (Southern District) Registry of Deeds in Book 25861, Page 161, the undersigned Massachusetts Institute of Technology Federal Credit Union being the present holder of said mortgage by Assignment of Mortgage from Members Mortgage Company, Inc. to Massachusetts Institute of Technology Federal Credit Union dated July 6, 2006 recorded in the Essex County (Southern District) Registry of Deeds in Book 25861, Page 182, for breach of the conditions of said Mortgage and for the purpose of foreclosing the same will be sold at Public Auction at:

### 11:00 A.M. on Friday, April 14, 2023

upon the hereinafter-described premises, known as and numbered as 24 Endicott Street, Peabody, Essex County (Southern District), Massachusetts, all and singularly the premises described in said mortgage, to wit:

The land with the buildings thereon, situated in Peabody, Essex County, Massachusetts on 24 Endicott Street, bounded and described as follows:

Beginning at the Southerly corner of said premises and thence running Northeasterly by land formerly of Stimpson, about two hundred and fourteen feet; thence running Northerly by land formerly of James Ware, one hundred twenty feet to Endicott Street; thence running Southwesterly by said Endicott Street, twenty-five feet; thence running Southerly by the Lawrence Branch of the Boston & Maine Railroad, formerly the Essex Railroad, about two hundred and fifty feet to the point begun at.

Together with the benefit of all easements of record, if in force and applicable.

For title reference see deed to me dated May 26, 1998 recorded at the Essex South District Registry of Deeds at Book 14833, Page 189.

The above-described premises shall be subject to all easements, restrictions, municipal or other public taxes, assessments, liens or claims in the nature of liens, outstanding tax titles, building, zoning and other land use laws and all permits and approvals issued pursuant thereto, including, without limitation, orders of conditions, and existing encumbrances of record created prior to said Mortgage, if there be any. Said premises are to be sold subject to the right of redemption of the United States of America, if any there be.

TERMS OF SALE: The highest bidder shall be required to make a deposit of $10,000.00 to the holder of said Mortgage, in cash or by certified or bank cashier's check at the time and place of said sale of said premises. The balance of the purchase price is to be paid to said holder in cash, by certified check or bank cashier's check, and thereupon the deed will be delivered, in thirty (30) days from the date of sale at the firm of Cunningham, Machanic, Cetlin, Johnson, Harney & Tenney, LLP, Attorneys for said holder, 220 North Main Street, Suite 301, Natick, Massachusetts.  The successful bidder shall be required to sign a Memorandum of Terms of Sale. The description of the premises contained in said Mortgage shall control in the event of an error in publication.

Other terms, if any, to be announced at the time and place of sale.

MASSACHUSETTS INSTITUTE OF TECHNOLOGY
FEDERAL CREDIT UNION
Present Holder of Said Mortgage,
By its Attorneys,
CUNNINGHAM, MACHANIC, CETLIN,
JOHNSON, HARNEY & TENNEY, LLP
220 North Main Street, Suite 301
Natick, MA  01760
(508)  651-7524

# Exhibit D

## ASSIGMENT OF REAL ESTATE
## PURCHASE CONTRACT

For value received, **ALEKS PALAJ**, an individual of 13 Glen Drive, Peabody, Essex County, Massachusetts, as assignor, (the "Assignor") *hereby transfer and assign* to **VITAVERA REALTY, LLC** a Massachusetts domestic limited liability company with offices at 110 Newbury Street, Danvers, Essex County, Massachusetts (the "Assignee"), its successors and assigns, as Assignee, *all rights and interests in that contract* between **Massachusetts Institute for Technology Federal Credit Union**, Seller and Assignor, Aleks Palaj, purchaser dated April 14, 2023, for the sale of the property known and numbered: **24 Endicott Street, Peabody, Massachusetts**, as more particularly described in Mortgage recorded with the Essex County South District Registry of Deeds at Record Book 25861, Page 161, (the "Contract") all as described in said contract, subject to covenants, conditions, and payments contained is said contract.

I authorize and empower assignee, on his performance of all the above-mentioned covenants, conditions and payments to demand and receive of Seller the Deed covenanted to be given in the Contract hereby assigned in the same manner and with the same affect as I could have done had this assignment not been made.

Assignor:

Date: April 17, 2023              By: _____

                                        ALEKS PALAJ
                                        Assignor

COMMONWEALTH OF MASSACHUSETTS          )
COUNTY OF ESSEX                        )

On this 17th day of April, 2023, before me, the undersigned notary public, personally appeared Aleks Palaj, proved to me through satisfactory evidence of identification which was his Massachusetts Driver's License to be the person whose name is signed on the preceding or attached document and acknowledged to me that he signed it voluntarily for its stated purpose.

_____ (official signature and seal of notary)
My commission expires:

# EXHIBIT E

SO.ESSEX #196 Bk:41565 Pg:336
05/16/2023 01:01 PM  DPO Pg 1/3
eRecorded

MASSACHUSETTS EXCISE TAX
Southern Essex District ROD
Date: 05/16/2023 01:01 PM
ID: 1575512 Doc# 20230516001960
Fee: $2,567.28 Cons: $563,000.00

## FORECLOSURE DEED

MASSACHUSETTS INSTITUTE OF TECHNOLOGY FEDERAL CREDIT UNION, with an address of 700 Technology Square, Cambridge, MA 02139, holder of a Mortgage from Suzanne Eser to Members Mortgage Company, Inc. dated July 6, 2006, recorded with Essex County (Southern District) Registry of Deeds in Book 25861, Page 161, by the power conferred by said Mortgage and every other power, for Five Hundred Sixty Three Thousand and 00/100 Dollars ($563,000.00) paid, grants to:

VITAVERA REALTY, LLC, a Massachusetts limited liability company, with offices at 110 Newbury St., Danvers, Massachusetts,

the premises conveyed by said Mortgage.

Said premises are conveyed subject to all municipal real estate taxes, assessments, liens and claims in the nature of liens now unpaid or hereafter becoming due and to all encumbrances of record.

Executed under seal this _____ day of _May_ , 2023.

MASSACHUSETTS INSTITUTE OF TECHNOLOGY
FEDERAL CREDIT UNION

By _Nancy J Fales_
Its _Senior Vice President, Lending_ , duly authorized
By: Nancy J. Fales, VP Lending

Commonwealth of Massachusetts                County of _Middlesex_

On _May 10th_ , 2023, before me, the undersigned Notary Public, personally appeared ____ _Nancy J Fales_ , personally known by me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he/she executed the instrument voluntarily for its stated purpose as the free act and deed of MASSACHUSETTS INSTITUTE OF TECHNOLOGY FEDERAL CREDIT UNION for its stated purpose.

Deborah Ann Sylvia
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
November 25, 2027

_Deborah Ann Sylvia_
Notary Public
My commission expires: _11/25/2027_
(Seal)

Doc#:708443

# AFFIDAVIT

I, Steven G. Manchini, Esq., of Cunningham, Machanic, Cetlin, Johnson, Harney & Tenney, LLP, attorneys for MASSACHUSETTS INSTITUTE OF TECHNOLOGY FEDERAL CREDIT UNION, make oath and say that the principal, plus interest and other obligations mentioned in the Mortgage above referred to were not paid or tendered or performed when due or prior to the sale, and that I caused to be published on March 16, 2023, March 23, 2023 and March 30, 2023 in *The Peabody Weekly News*, a newspaper published or by its title page purporting to be published in Peabody, Massachusetts and having a general circulation in Peabody, Massachusetts, notice of which the following is a true copy:  See Exhibit A, attached hereto and made a part hereof.

I also complied with Chapter 244, Section 14 of Massachusetts General Laws, as amended, by mailing the notices required thereunder by certified mail, return receipt requested.

Pursuant to said Notice at the time and place set forth in said Notice, MASSACHUSETTS INSTITUTE OF TECHNOLOGY FEDERAL CREDIT UNION sold the mortgage premises at public auction by Daniel P. McLaughlin of Daniel P. McLaughlin & Co, Auctioneers, Inc., a licensed auctioneer, to ALEKS PALAJ, for Five Hundred Sixty Three Thousand and 00/100 Dollars ($563,000.00), bid by said ALEKS PALAJ, being the highest bid made therefore at said auction.  Said bid was subsequently assigned to VITAVERA REALTY, LLC by assignmentn of bid recorded herewith.

_____
Steven G. Manchini, Esq.

## COMMONWEALTH OF MASSACHUSETTS

Essex, ss.

On this __12th__ day of __May_____, 2023, before me, the undersigned notary public, personally appeared Steven G. Manchini, Esq., of Cunningham, Machanic, Cetlin, Johnson, Harney & Tenney, LLP, proved to me through satisfactory evidence of identification, which was personal knowledge, to be the person who signed the preceding or attached document in my presence, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

_____
Notary Public
My commission expires:
(Seal)



**SHANNON M. BAGLOLE**
**Notary Public**
**Commonwealth of Massachusetts**
**My Commission Expires**
**August 12, 2027**

# EXHIBIT A

## MORTGAGEE'S SALE OF REAL ESTATE

By virtue and in execution of the Power of Sale contained in a certain Mortgage dated July 6, 2006 given by Suzanne Eser to Members Mortgage Company, Inc. recorded in Essex County (Southern District) Registry of Deeds in Book 25861, Page 161, the undersigned Massachusetts Institute of Technology Federal Credit Union being the present holder of said mortgage by Assignment of Mortgage from Members Mortgage Company, Inc. to Massachusetts Institute of Technology Federal Credit Union dated July 6, 2006 recorded in the Essex County (Southern District) Registry of Deeds in Book 25861, Page 182, for breach of the conditions of said Mortgage and for the purpose of foreclosing the same will be sold at Public Auction at:

### 11:00 A.M. on Friday, April 14, 2023

upon the hereinafter-described premises, known as and numbered as 24 Endicott Street, Peabody, Essex County (Southern District), Massachusetts, all and singularly the premises described in said mortgage, to wit:

The land with the buildings thereon, situated in Peabody, Essex County, Massachusetts on 24 Endicott Street, bounded and described as follows:

Beginning at the Southerly corner of said premises and thence running Northeasterly by land formerly of Stimpson, about two hundred and fourteen feet; thence running Northerly by land formerly of James Ware, one hundred twenty feet to Endicott Street; thence running Southwesterly by said Endicott Street, twenty-five feet; thence running Southerly by the Lawrence Branch of the Boston & Maine Railroad, formerly the Essex Railroad, about two hundred and fifty feet to the point begun at.

Together with the benefit of all easements of record, if in force and applicable.

For title reference see deed to me dated May 26, 1998 recorded at the Essex South District Registry of Deeds at Book 14833, Page 189.

The above-described premises shall be subject to all easements, restrictions, municipal or other public taxes, assessments, liens or claims in the nature of liens, outstanding tax titles, building, zoning and other land use laws and all permits and approvals issued pursuant thereto, including, without limitation, orders of conditions, and existing encumbrances of record created prior to said Mortgage, if there be any. Said premises are to be sold subject to the right of redemption of the United States of America, if any there be.

TERMS OF SALE: The highest bidder shall be required to make a deposit of $10,000.00 to the holder of said Mortgage, in cash or by certified or bank cashier's check at the time and place of said sale of said premises. The balance of the purchase price is to be paid to said holder in cash, by certified check or bank cashier's check, and thereupon the deed shall be delivered, in thirty (30) days from the date of sale at the firm of Cunningham, Machanic, Cetlin, Johnson, Harney & Tenney, LLP, Attorneys for said holder, 220 North Main Street, Suite 301, Natick, Massachusetts. The successful bidder shall be required to sign a Memorandum of Terms of Sale. The description of the premises contained in said Mortgage shall control in the event of an error in publication.

Other terms, if any, to be announced at the time and place of sale.

MASSACHUSETTS INSTITUTE OF TECHNOLOGY
FEDERAL CREDIT UNION
Present Holder of Said Mortgage,
By its Attorneys,
CUNNINGHAM, MACHANIC, CETLIN, JOHNSON,
HARNEY & TENNEY, LLP
220 North Main Street, Suite 301
Natick, MA 01760
(508) 651-7524

Weekly News: March 16, 23 and 30

# Exhibit F

# THORNTON LAW OFFICE

CHRIS J. THORNTON, ESQ.
172 MAIN STREET, PO BOX 701
ROWLEY, MA 01969

PHONE (978)432.1211
FAX (978)432.1252
ThorntonLawOffice@Comcast.net

## 14 DAY NOTICE TO QUIT

*Service by Constable*

*Summons & complaint
Left at usual
July 8   10:40 A.M.*

Ms. Suzanne Eser
24 Endicott Street
Peabody MA 01960

Landlord/Owner:

VitaVera Realty LLC
110 Newbury Street
Danvers MA 01923

Address of Premises:  24 Endicott Street, (Unit 1) Peabody, MA 01960

On behalf of VitaVera Realty LLC, the Landlord/Owner of the premises located at 24 Endicott Street, Peabody, Essex County, Massachusetts, **you are hereby notified to quit and deliver up the premises** you now possess as a tenant at 24 Endicott Street, Peabody, MA 01960 to the Landlord/Owner.

The reason for being served with Notice to Quit is that *you are a tenant at sufferance* and do not have permission to be in the home.

You have fourteen (14) days from receipt of this notice to leave or VitaVera Realty LLC will go to court and get permission to evict you. By law, a court is the final authority in every eviction and if you believe you are entitled to remain as a tenant, you or your lawyer may present your case in court.

Should you disregard this Notice to Quit, you will be responsible for use and occupancy for the entire period of any term held over.

HEREOF FAIL NOT, or I shall take due course of law to eject you from same.

Dated: May 19, 2023

Landlord: VitaVera Realty LLC
Andri Moli, Managing Member
By and through Chris Thornton, Esq.
duly appointed Attorney in fact

1

# Exhibit F

# THORNTON LAW OFFICE

CHRIS J. THORNTON, ESQ.
172 MAIN STREET, PO BOX 701
ROWLEY, MA 01969

PHONE (978)432.1211
FAX (978)432.1252
ThorntonLawOffice@Comcast.net

## 14 DAY NOTICE TO QUIT

*Service by Constable*

*[handwritten: summons & complaint
Last & Usual
July 8   10:40 A.M.]*

Ms. Suzanne Eser
24 Endicott Street
Peabody MA 01960

Landlord/Owner:

VitaVera Realty LLC
110 Newbury Street
Danvers MA 01923

Address of Premises: 24 Endicott Street, (Unit 1) Peabody, MA 01960

On behalf of VitaVera Realty LLC, the Landlord/Owner of the premises located at 24 Endicott Street, Peabody, Essex County, Massachusetts, **you are hereby notified to quit and deliver up the premises** you now possess as a tenant at 24 Endicott Street, Peabody, MA 01960 to the Landlord/Owner.

The reason for being served with Notice to Quit is that *you are a tenant at sufferance* and do not have permission to be in the home.

You have fourteen (14) days from receipt of this notice to leave or VitaVera Realty LLC will go to court and get permission to evict you. By law, a court is the final authority in every eviction and if you believe you are entitled to remain as a tenant, you or your lawyer may present your case in court.

Should you disregard this Notice to Quit, you will be responsible for use and occupancy for the entire period of any term held over.

HEREOF FAIL NOT, or I shall take due course of law to eject you from same.

Dated: May 19, 2023

*[signature]* , PoA
Landlord: VitaVera Realty LLC
Andri Moli, Managing Member
By and through Chris Thornton, Esq.
duly appointed Attorney in fact

1

Exhibit G

**Housing Court Department**
Division: Northeast
Address: 2 Appleton St., 2nd Fl, Lawrence, MA 01840
Telephone Number: 978-689-7833
Hours of Operations: **Monday - Friday 8:30 AM to 4:30 PM**

For Court Use Only:
Docket No: _____

## Commonwealth of Massachusetts
### SUMMARY PROCESS (EVICTION) SUMMONS AND COMPLAINT

**IMPORTANT: NOTICE OF A COURT CASE TO EVICT YOU - PLEASE READ IT CAREFULLY**

*IMPORTANTE: ESTA ES UNA NOTIFICACION DE UN CASO EN CORTE RESPETO A PROCEDIMIENTOS DE DESALOJO - POR FAVOR DE LEER CON CUIDADO*

TO: DEFENDANT(S)/TENANT(S)/OCCUPANT(S): SUZANNE ESER
ADDRESS: 24 ENDICOTT STREET   CITY/TOWN: PEABODY   ZIP: 01960
EMAIL: UNKNOWN   TELEPHONE: UNKNOWN

THE COURT WILL SEND YOU A NOTICE OF THE DATE, TIME, AND MANNER OF YOUR COURT EVENT.

You are hereby summonsed to appear at a hearing before a Judge of the Court to defend against the complaint of:
PLAINTIFF/LANDLORD/LESSOR/OWNER:
VITAVERA REALTY, LLC
of STREET: 110 NEWBURY STREET   CITY/TOWN: DANVERS   ZIP: 01923
that you occupy the premises at 24 ENDICOTT STREET PEABODY MA 01960
being within the judicial district of this Court, unlawfully and against the right of said Plaintiff/Landlord/Owner
because: YOU ARE A TENANT AT SUFFERANCE FOLLOWING FORECLOSURE
OF LEGAL TITLE AND POSSESSION ON OR ABOUT APRIL 14, 2023
and further, that $_____ rent is owed according to the following account:

ACCOUNT ANNEXED (itemize)

_____
_____
_____
_____

CHRISTOPHER J. THORNTON, ESQ
Printed Name of Plaintiff or Attorney

Signature of Plaintiff or Attorney

172 MAIN STREET 7 ROWLEY MA 01969
Address of Plaintiff or Attorney

CHRIS @ THORNTONLAWNORTHSHOLE.C
Email of Plaintiff or Attorney

978 432 1211   642691
Telephone Number   BBO#

**NOTICE TO EACH DEFENDANT/TENANT/OCCUPANT**
If you do not file and serve an answer, or if you do not defend at the time of the trial, Judgment may be entered against you for possession and the rent as requested in the complaint. Please see the **Notice to Defendant** section on the back side of this page.

**FOR INFORMATION ABOUT EMERGENCY RENTAL AND MORTGAGE ASSISTANCE:**
Please visit: www.mass.gov/CovidHousingHelp or call 211 for assistance.

To the Sheriff of our several counties, or their Deputies, or any constable of any City or Town within said Commonwealth, Greetings: We command you to summon the within named defendant(s)/tenant(s)/occupant(s) to appear as herein ordered.
WITNESS:
/s/ _____
First Justice

/s/ _____
Clerk Magistrate

Service by: 6.12.2023
Entry Date by: 6.19.2023
Trial Date: To Be Determined by the Court

Last Updated 1/03/20

Page 1 of 2

**¡Importante! ¡Traducir! Enpòtan! Tradwi! Quan ɯɓɾɑŋɔ! Dịch!**

---

## IMPORTANT NOTICE TO ALL PARTIES

If you need a free interpreter or reasonable accommodations, please call the Court's Clerk's Office. For information about the Lawyer for the Day Program, Tenancy Preservation Program, or other services that may help both parties with their case, please go to:

**https://www.mass.gov/guides/housing-court-resources**

---

**IMPORTANT NOTICE TO PLAINTIFF/LANDLORD/LESSOR/OWNER:** Have the Officer complete and return the below return notice. Service must be made on each defendant(s) not later than the seventh day and not earlier than the thirtieth day before the Monday entry date. This form must be filed in Court no later than the close of business on the scheduled Monday entry date. In appropriate cases, proper evidence of notice to quit must be provided to this Court upon the filing of this Complaint.

**A P.O. box will not be accepted as an address for the Plaintiff**



## RETURN OF SERVICE

**AAA Constable Service    ●    25 Hurd Street, Lowell, MA 01852    ●    978-453-8275**

Essex, ss                                                                      Date: June 8, 2023

**Summary Process Summons and Complaint**

By virtue of this Writ, I this day on June 8, 2023 at 10:40am, served the within named tenant or occupant with summonsed him her as herein directed, by leaving last and usual place of abode by wedging in apt door for **Suzanne Eser** at 24 Endicott St, Peabody, MA 01960. Also mailed a copy via USPS first class mail.

Fee for service is $ 70.00

_Mark McGrath_
_____

Mark McGrath, Massachusetts Constable

TOTAL        $ _____

Address of Officer
_____

Telephone Number of Officer
_____

---

**IMPORTANT NOTICE TO EACH DEFENDANT/TENANT/OCCUPANT:** When this case is filed with the Court, the Court will send a notice with the date, time, and how the court event will be conducted. If you do not receive a notice, please contact the Court's Clerk's Office at **978-689-7833**

You (or your attorney) must participate in all Court events to present your defense. You (or your attorney) must also file a written Answer to this Complaint. An Answer is your response stating the reason(s) why you should not be evicted and may include any claims you have against the Plaintiff. A Summary Process Answer Form is available on the Housing Court's website at www.mass.gov/lists/housing-court-forms and in the Clerk's Office.

You must file (e-file, deliver or mail) your Answer with the Court's Clerk's Office and serve (deliver or mail) a copy on the Plaintiff (or Plaintiff's attorney) at the address shown in this summons. The Court's notice about the court event will also include the deadline by which the Answer must be received by the Court's Clerk's Office and received by the Plaintiff (or the Plaintiff's Attorney).

# Exhibit H

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

HOUSING COURT DEPARTMENT
NORTHEAST DIVISION
SUMMARY PROCESS
NO. **23-SP-3218**

**VITA VERA REALTY, LLC.**
Plaintiff

VS.

**SUZANNE ESER**
Defendant

## RULINGS ON PLAINTIFF'S MOTION FOR ISSUANCE OF EXECUTION

Plaintiff filed this Summary Process post foreclosure eviction case against defendant on June 20, 2023.   On September 27, 2023, a Default Judgment entered against defendant. Defendant filed a Motion to Vacate the Default Judgment on October 5, 2023, which the court denied after hearing on October 13, 2023, finding that no credible meritorious defenses were presented.   On March 29, 2024, the court granted defendant a stay of execution that was conditioned upon defendant making monthly use & occupancy payments to plaintiff.

After hearing, this court finds that defendant has not paid the use & occupancy payments as ordered, constituting substantial breach of material conditions of the stay issued on March 29, 2024.   Accordingly, plaintiff's motion shall be allowed, and Execution shall issue as requested.

**SO ORDERED**:

Date: 5/3/24

_____
**TIMOTHY F. SULLIVAN
JUDGE**

Exhibit 1

| EXECUTION FOR POSSESSION AND MONEY JUDGMENT | DOCKET NUMBER 23H77SP003218 | Trial Court of Massachusetts Housing Court Department |
|---|---|---|

**CASE NAME:** Vitavera Realty Llc vs. Suzanne Eser

| JUDGMENT- DEBTOR(S) AGAINST WHOM EXECUTION IS ISSUED | COURT NAME & ADDRESS |
|---|---|
| Suzanne Eser | Northeast Housing Court<br>Fenton Judicial Center<br>2 Appleton Street<br>Lawrence, MA 01840 |

| JUDGMENT- CREDITOR(S) (OR CREDITOR'S ATTORNEY) WHO MUST ARRANGE SERVICE OF EXECUTION | JUDGMENT- CREDITOR(S) IN WHOSE FAVOR EXECUTION IS ISSUED |
|---|---|
| Christopher Thornton, Esq.<br>Thornton Law Office<br>172 Main St<br>PO 701<br>Rowley, MA 01969 | Vitavera Realty Llc |

| PREMISES ADDRESS: 24 Endicott Street   Peabody MA 01960 | FURTHER ORDERS OF THE COURT: |
|---|---|

**TO THE SHERIFFS OF THE SEVERAL COUNTIES OR THEIR DEPUTIES, OR ANY CONSTABLE OF ANY CITY OR TOWN WITHIN THE COMMONWEALTH:**

The Judgment- Creditor(s) named above has/have recovered Judgment and Possession of the subject premises shown above, which were leased or rented for dwelling purposes against the Judgment-Debtor(s) named above on

**MONEY JUDGMENT: WE COMMAND YOU,** therefore, to collect the below sum, with your fees, of the money of said Judgment-Debtor(s), his or her goods, chattels, lands or tenements, in any manner permitted by law, and to return this writ satisfied or unsatisfied, to the clerk of this Court, all within **twenty years** from the "Date Judgment Entered", or within ten days after this writ has been satisfied or discharged.

**POSSESSION JUDGMENT: WE COMMAND YOU,** therefore, to deliver said premises to the Judgment-Creditor(s) in accordance with the requirements of G.L. c. 235, § 23 and G.L. c. 239, § 3, to cause the Judgment-Creditor(s) to have possession of the premises shown above without delay.

This Writ of Execution is valid until  08/04/2024 for **possession only.** This form must be returned to the Clerk-Magistrate's office of this court, along with your return of service, within ten days after this judgment for possession has been satisfied or discharged, or after 08/04/2024 if this judgment remains unsatisfied or undischarged.

**NOTICE TO OFFICER:** This Writ of Execution for possession is valid until 08/04/2024.

| | |
|---|---|
| 1. Date Judgment Entered | 09/27/2023 |
| 2. Compensatory Damages | $0.00 |
| 3. Punitive Damages | $0.00 |
| 4. Attorney Fees (*if any*) | $0.00 |
| 5. Prejudgment Interest | .00 |
| 6. Court Costs | $236.54 |
| 7. Judgment Total | $236.54 |
| 8. Postjudgment Interest | $17.28 |
| 9. **EXECUTION TOTAL** ( *Lines 2 + 5 + 6 + 8, plus Line 3 & Line 4, if any*) | $253.82 |

**RETURN OF SERVICE:** ☐ Satisfied as to **BOTH**   ☐ Satisfied as to **Money Judgment ONLY**   ☐ Satisfied as to **Possession ONLY**

| TESTE OF FIRST JUSTICE<br>**WITNESS:**  Hon. Gustavo A Del Puerto | DATE EXECUTION ISSUED<br>05/06/2024 | CLERK-MAGISTRATE/ASST. CLERK<br>X |
|---|---|---|

Date/Time Printed:- 05-06-2024 10:57:38

HC027: 5/2019

# Exhibit J

# Constable's Office

**AAA Constable Service**
**25 Hurd Street**
**Lowell, MA 01852**
**978-453-8275**

## NOTICE OF SCHEDULED EVICTION

Date: 5/13/2024

**\*\*Eviction Notice-Do not ignore**
**Suzanne Eser**
**24 Endicott Street**
**Peabody, MA 01960**

Pursuant to the M.G.L. Chap. 239, S.3, by virtue of Execution No. 23H77SP003218

issued by the **Northeast Housing Court.**

You are hereby notified that on the 20th day of May, 2024

at **10:00am.** I will serve and/or levy upon said Execution and physically remove the

defendant(s) and his or her personal property from the said premises if the said defendant has

not prior to that time vacated the said premises voluntarily. The officer will place any personal

property remaining on the premises at the time the execution is levied in storage with Southcoast Moving and

Storage, 2302 Turnpike Street, #7, North Andover, MA, 01845, 508-984-4111. Or, if the tenants wish to have their

property stored at another state approved warehouse, the request must be made in writing to the Constable prior to

the start of the move. The warehouser's storage rates may be ascertained

by contacting the Commissioner, The Division of Occupational Licensure, 1000 Washington Street, Suite 710, Boston,

MA 02118, 617-701-8600. The warehouser may sell at auction any property that is unclaimed after 6 months and

may retain that portion of the proceeds necessary to compensate him for any unpaid storage fees accrued as of the

date of the auction, except as provided in section 4. The defendant should notify the warehouse in

writing at the business address listed above of any change in the defendant's mailing address.

*IMPORTANT: Please remember to take all medications, eyeglasses, personal possessions and personal papers you may need. The following items will not be taken or stored: pets of any kind, dirty dishes, food or any containers that contain food, chemicals or liquid cleaning supplies, bath supplies, plants, dirty or soiled clothing, infested items, badly stained or soiled mattresses, badly stained or soiled furniture or anything that could be deemed as a health hazard or contamination issue that will not be able to be put in a shared storage warehouse. If pets of any kind are left behind, animal control will be contacted for rescue and you could be liable for animal neglect.*

Mark McGrath · cell 781-254-7327
Massachusetts Constable